TROUTMAN PEPPER HAMILTON SANDERS LLP
Terrence R. McInnis, Bar No. 155416
terrence.mcinnis@troutman.com
Michael K. Cassata, Bar No. 287928
michael.cassata@troutman.com
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone: 949.622.2700
Facsimile:  949.622.2739

Attorneys for Plaintiff
CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, SYNDICATE 2623

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SYNDICATE 2623,<br><br>Plaintiff,<br><br>v.<br><br>OXGORD, INC., and DAY TO DAY IMPORTS, INC.,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Certain Underwriters at Lloyds, London, Syndicate 2623 ("Plaintiff" or "Underwriters") brings this Complaint against Defendants Oxgord, Inc. ("Oxgord") and Day to Day Imports, Inc. ("DTD") (collectively, the "Defendants"). Underwriters allege as follows:

## **JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is complete diversity between parties, and the amount in controversy

1. exceeds the sum of $75,000, exclusive of interest and costs.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) since the Defendants resides in this District, which is also where the Policy that is the subject of this lawsuit was issued.

## THE PARTIES

3. Plaintiff Certain Underwriters at Lloyd's, London, Syndicate 2623 is, and at all relevant times was, an unincorporated association with principal offices in London, United Kingdom ("UK"). For the year of account at issue, Plaintiff has a sole member or "name," which is a UK corporation with its principal place of business in London, UK, and is a citizen of a foreign state within the meaning of 28 U.S.C. § 1332(c)(1). Plaintiff subscribed to the policy of insurance that is the subject of this case, issued in Gardena, California.

4. Oxgord is a corporation organized and incorporated under the laws of the State of California with its principal place of business in Gardena, California and as such, is a citizen of California within the meaning of 28 U.S.C. § 1332(c)(1).

5. DTD is a corporation organized and incorporated under the laws of the State of California with its principal place of business in Gardena, California and as such, is a citizen of California within the meaning of 28 U.S.C. § 1332(c)(1).

## INTRODUCTION

6. This is an action by Underwriters seeking a declaration concerning the rights and obligations of the parties under a policy of insurance issued to DTD and Oxgord, in connection with two lawsuits captioned *Jerry Hild v. Amazon.com Services, et al.*, Case No. FCS056179 currently pending in the Solano County, California Superior Court (the "*Hild* action"), and *Domenico Buonsante, et al. v. Oxgord, Inc., et al.*, Case No. 3:21-cv-01850 currently pending in the United States District Court for the Middle District of Pennsylvania (the "*Buonsante* action").

7. In this Complaint, Underwriters seek a judgment that Underwriters have no obligation under the policy to defend or indemnify the Defendants in

connection with the *Hild* action and *Buonsante* action.

## FACTUAL BACKGROUND

### The Policy

8. Underwriters issued Policy No. CGL19070A20 to Oxgord and DTD as the Named Insureds for the July 8, 2020 to July 8, 2021 Policy Period (the "Policy"). Attached as Exhibit "A" hereto are true and correct copies of the forms and endorsements that comprise the Policy (not including the Application for the Policy, which also forms a part of the Policy).

9. The Policy's insuring agreements provide, in part, as follows:

**I.   INSURING AGREEMENTS**

    **A.   Bodily Injury and Property Damage**

> The Underwriters will pay on behalf of the **Insured Damages** and **Claims Expenses** in excess of the Retention, which the **Insured** shall become legally obligated to pay … because of any **Claim** or **Claims** for **Bodily Injury** and/or **Property Damage** to which this coverage applies caused by an **Accident**, except as excluded or limited by the terms, conditions and exclusions of this Policy. …

    **C.   Products/Completed Operations Liability**

> The Underwriters will pay on behalf of the **Insured Damages** and **Claims Expenses** in excess of the Retention which the **Insured** shall become legally obligated to pay or assumed by the **Insured** under contract because of any **Claim** or **Claims** for **Bodily Injury** or **Property Damage** caused by an **Accident** within the **Products/Completed Operations Liability Hazard** as stated in the Declarations except as excluded or limited by the terms, conditions and exclusions of this Policy. . . .

10. The Policy defines a "**Claim**" in relevant part as "a written notice

received by the **Insured** of an intention to hold the **Insured** responsible for compensation for **Damages**, including the service of suit or institution of arbitration proceedings against the **Insured**[.]" (Policy Section VI.G.1.).

11. The Policy defines an "**Accident**" as "an unintended and unexpected event, including continuous or repeated exposure to substantially the same general harmful conditions, and involves one or more persons or entities, and which results in **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury**." (Policy Section VI.A.).

12. "**Insured**" is defined in the Policy to include the Named Insureds identified in Item 1 of the Declarations – i.e., Oxgord and DTD. (Policy Section III.A.).

13. The term "**Insured Contract**" is defined in the Policy as "that part of any written contract or agreement pertaining to the **Insured's** operations or facilities under which the **Insured** assumes any tort liability of another to pay **Damages** because of **Bodily Injury** or **Property Damage** to a third person or organization, provided such contract or agreement is made prior to the **Bodily Injury** or **Property Damage**. Tort liability means a liability which would be imposed by law in the absence of any contract or agreement." (Policy Section VI.O.).

14. The Policy contains the following Exclusions, which provide in relevant part:

> **V.   EXCLUSIONS**
>
> . . .
>
> **5.   Exclusions Applicable to all Insuring Agreements**
>
> The coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** …
>
> . . .

F. arising out of or relating to any liability under any contract or agreement, whether written or oral, unless:

1. such liability would have attached to the **Insured** in the absence of such contract or agreement; or

2. such liability was assumed by an **Insured** in an **Insured Contract** . . . .

. . .

J. or circumstance that might lead to a **Claim** arising out of any … act, error or omission ... which first took place, or is alleged to have taken place, prior to the Retroactive Date;

. . .

MM. or **Accident**:

1. Which results from any act, error, omission, condition ... work, business or operations which took place, performed by or on behalf of the **Insured** on or prior to the Retroactive Date set forth in Item 6 of the Declarations; and/or

2. Which results from any act, error, omission, condition ... work, business or operations performed by or on behalf of the **Insured** which act, error, omission, condition ... work, business or operations has commenced or is pending on or prior to the Retroactive Date set forth in Item 6 of the Declarations.

15. The Retroactive Date set forth in the Policy Declarations is March 1, 2020.

## The *Hild* Action

16. On or about March 9, 2021, Plaintiff Jerry Hild ("Hild") filed a Complaint in the Superior Court for the State of California, County of Solano, naming as defendants, amongst others, Oxgord. A true and correct copy of the Complaint in the *Hild* action is attached hereto as Exhibit "B." DTD was added to

the *Hild* action as a defendant on January 14, 2022.

17. The Complaint alleges that on or about December 7, 2019, Hild purchased an Oxgord Dual Height Aluminum Folding Ladder, 330 lb. capacity (the "Ladder"). The Complaint alleges that the second time he used the Ladder, on June 22, 2020, the Ladder suddenly collapsed, causing Hild to fall approximately 6 feet.

18. The Complaint alleges that the frame of the Ladder was defective and not capable of bearing the advertised weight capacity. As a result of the fall, Hild allegedly suffered injuries to his head and elbow.

19. The Complaint alleges that the Ladder was defective and unsafe for its intended use as of the date Hild purchased it in December 2019. Hild further alleges that Oxgord breached an implied warranty when it offered for sale, and sold to Hild in December 2019, a product advertised as being fit for a particular use when it was not fit for such use. Hild further alleges that he was induced to purchase the ladder based upon misrepresentations in advertising of the product in December 2019.

20. The Complaint asserts causes of action against all Defendants for (1) Strict Liability in Tort; (2) Negligence; (3) Breach of Implied Warranty; (4) False Advertising, and (5) Negligent Infliction of Emotional Distress.

21. Oxgord was served with the Complaint on or about May 26, 2021, and tendered the matter to Underwriters on July 6, 2021. Underwriters appointed counsel to represent Oxgord, subject to a full reservation of rights under the Policy and at law, while Underwriters investigated coverage.

22. Underwriters denied coverage for the *Hild* action by letter dated December 10, 2021.

### The *Buonsante* Action

23. On or about October 23, 2020, Oxgord gave Underwriters notice of an August 18, 2020 letter from attorneys representing Domenico Buonsante. The letter claimed that Buonsante suffered personal injuries in a fall from an allegedly

1 defective ladder.

2 24. The August 18, 2020 letter was addressed to Groupon, Inc. ("Groupon") and alleged that the subject ladder was purchased from Groupon. Groupon tendered its defense and indemnity to Oxgord and/or its insurance carriers on September 25, 2020, pursuant to Oxgord's purported contractual obligation to Groupon ("the Tender").

25. On or about September 28, 2021, Plaintiffs Domenico Buonsante and Concetta Buonsante filed a Complaint against Oxgord and Groupon (collectively, the "Defendants") in the Pennsylvania Court of Common Pleas, Luzerne County. A true and correct copy of the Complaint in the *Buonsante* action is attached hereto as Exhibit "C." The *Buonsante* action was removed to the United States District Court for the Middle District of Pennsylvania on November 1, 2021.

26. The Complaint alleges that on or about June 3, 2015, the Buonsantes purchased an Oxgord telescopic ladder (the "Ladder") via Groupon. The Buonsantes allege that on August 12, 2020, one of the extended rungs collapsed, causing the height of the Ladder to decrease and Domenico Buonsante to fall several feet to the ground. As a result of the fall, Domenico Buonsante allegedly suffered injuries to his eye area, head, neck, shoulder, and humerus.

27. The Complaint alleges that the Ladder was negligently designed and manufactured, and was defective and/or in an unreasonably dangerous condition at the time it was sold in June 2015. The Complaint further alleges that Oxgord breached an implied warranty when it sold to the Buonsantes in June 2015 a product warranted as being fit for the purposes and uses for which it was intended, when it was not fit for such use.

28. The Complaint asserts causes of action against all Defendants for (1) Negligence; (2) Strict Products Liability; (3) Breach of Implied Warranty of Fitness and/or Merchantability; and (4) Loss of Consortium.

29. Oxgord requested coverage under the Policy for the *Buonsante* action

and for Groupon's Tender of defense and indemnity to Oxgord. Underwriters denied coverage for the *Buonsante* action and the Tender by letter dated December 10, 2021.

## COUNT I

### (Declaratory Relief – No Coverage for the *Hild* Action)

30. Underwriters repeat and incorporate by reference the allegations in paragraphs 1 through 29 of the Complaint.

31. Policy Section V.5.J. provides that "[t]he coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** … or circumstance that might lead to a **Claim** arising out of an … act, error or omission ... which first took place, or is alleged to have taken place, prior to the Retroactive Date[.]"

32. Policy Section V.5.MM.1 provides that "[t]he coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** … or **Accident** … [w]hich results from any act, error, omission, condition ... work, business or operations which took place, performed by or on behalf of the **Insured** on or prior to the Retroactive Date[.]"

33. Policy Section V.5.MM.2 provides that "[t]he coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** … or **Accident** … [w]hich results from any act, error, omission, condition … work, business or operations performed by or on behalf of the **Insured** which act, error, omission, condition … work, business or operations has commenced or is pending on or prior to the Retroactive Date[.]"

34. The Policy Retroactive Date is March 1, 2020.

35. The *Hild* action alleges that the ladder at issue was defective and unsafe for its intended use as of the date Hild purchased it in December 2019.

36. The *Hild* action further alleges that Oxgord breached an implied warranty when it offered for sale, and sold to Hild in December 2019, a product

advertised as being fit for a particular use when it was not fit for such use.

37. The *Hild* action further alleges that Hild was induced to purchase the ladder based upon misrepresentations in advertising of the product in December 2019.

38. The Claim and/or Accident at issue in the *Hild* action arises out of or results from acts, errors, omissions, conditions, and/or operations by or on behalf of the Defendants that occurred before the Policy's March 1, 2020 Retroactive Date, and so no coverage is afforded for the Defendants under the Policy by operation of Policy Sections V.5.J., V.5.MM.1, and/or V.5.MM.2.

39. An actual and justiciable controversy exists between Underwriters and Defendants regarding Underwriters' obligations under the Policy insofar as Defendants contend that coverage is afforded to them for the *Hild* action while Underwriters contend that coverage is not afforded for that suit.

40. By virtue of the foregoing, Underwriters are entitled to a judgment declaring that there is no duty to defend or indemnify Defendants in the *Hild* action by operation of Policy Sections V.5.J., V.5.MM.1, and/or V.5.MM.2.

## COUNT II

**(Declaratory Relief – No Coverage for the *Buonsante* Action)**

41. Underwriters repeat and incorporate by reference the allegations in paragraphs 1 through 40 of the Complaint.

42. Policy Section V.5.J. provides that "[t]he coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** … or circumstance that might lead to a **Claim** arising out of an … act, error or omission ... which first took place, or is alleged to have taken place, prior to the Retroactive Date[.]"

43. Policy Section V.5.MM.1 provides that "[t]he coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** … or **Accident** … [w]hich results from any act, error,

omission, condition ... work, business or operations which took place, performed by or on behalf of the **Insured** on or prior to the Retroactive Date[.]"

44. Policy Section V.5.MM.2 provides that "[t]he coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** … or **Accident** … [w]hich results from any act, error, omission, condition … work, business or operations performed by or on behalf of the **Insured** which act, error, omission, condition … work, business or operations has commenced or is pending on or prior to the Retroactive Date[.]"

45. The Policy Retroactive Date is March 1, 2020.

46. The *Buonsante* action alleges that the ladder at issue was negligently designed and manufactured, and was defective and/or in an unreasonably dangerous condition at the time it was sold in June 2015.

47. The *Buonsante* action further alleges that Oxgord breached an implied warranty when it sold to the Buonsantes in June 2015 a product warranted as being fit for the purposes and uses for which it was intended, when it was not fit for such use.

48. The Claim and/or Accident at issue in the *Buonsante* action arises out of or results from acts, errors, omissions, conditions, and/or operations by or on behalf of the Defendants that occurred before the Policy's March 1, 2020 Retroactive Date, and so no coverage is afforded for the Defendants under the Policy by operation of Policy Sections V.5.J., V.5.MM.1, and/or V.5.MM.2.

49. An actual and justiciable controversy exists between Underwriters and Defendants regarding Underwriters' obligations under the Policy insofar as Defendants contend that coverage is afforded to them for the *Buonsante* action while Underwriters contend that coverage is not afforded for that suit.

50. By virtue of the foregoing, Underwriters are entitled to a judgment declaring that there is no duty to defend or indemnify Defendants in the *Buonsante* action by operation of Policy Sections V.5.J., V.5.MM.1, and/or V.5.MM.2.

# COUNT III

## (Declaratory Relief – No Coverage for the Groupon Tender)

51. Underwriters repeat and incorporate by reference the allegations in paragraphs 1 through 50 of the Complaint.

52. Policy Section V.5.J. provides that "[t]he coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** … or circumstance that might lead to a **Claim** arising out of an … act, error or omission ... which first took place, or is alleged to have taken place, prior to the Retroactive Date[.]"

53. Policy Section V.5.MM.1 provides that "[t]he coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** … or **Accident** … [w]hich results from any act, error, omission, condition ... work, business or operations which took place, performed by or on behalf of the **Insured** on or prior to the Retroactive Date[.]"

54. Policy Section V.5.MM.2 provides that "[t]he coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** … or **Accident** … [w]hich results from any act, error, omission, condition … work, business or operations performed by or on behalf of the **Insured** which act, error, omission, condition … work, business or operations has commenced or is pending on or prior to the Retroactive Date[.]"

55. The Policy Retroactive Date is March 1, 2020.

56. Policy Section V.5.F. provides that "[t]he coverage under this Insurance does not apply to **Damages**, **Penalties** or **Claims Expenses** incurred with respect to any **Claim** … arising out of or relating to any liability under any contract or agreement, whether written or oral, unless: 1. such liability would have attached to the **Insured** in the absence of such contract or agreement; or 2. such liability was assumed by an **Insured** in an **Insured Contract** [.]"

57. The Tender by Groupon to Oxgord seeks defense and indemnity in

connection with the *Buonsante* action, which alleges that the ladder at issue was negligently designed and manufactured, and was defective and/or in an unreasonably dangerous condition at the time it was sold in June 2015.

58.   The Tender, being a direct and proximate result of the *Buonsante* action, is a Claim and/or concerns an Accident that arises out of or results from acts, errors, omissions, conditions, and/or operations by or on behalf of the Defendants that occurred before the Policy's March 1, 2020 Retroactive Date, and so no coverage is afforded for the Defendants under the Policy for the Tender by operation of Policy Sections V.5.J., V.5.MM.1, and/or V.5.MM.2.

59.   The Tender also seeks a defense and indemnity against the *Buonsante* action from Oxgord because of Oxgord's contractual obligation to Groupon. Oxgord's contract with Groupon is not an Insured Contract within the meaning of the Policy, nor would Oxgord's liability for the Tender attach in the absence of the contract.

60.   The Tender is a Claim that arises out of and relates to liability owed under a contract or agreement, and so no coverage is afforded for the Defendants under the Policy for the Tender by operation of Policy Sections V.5.F.

61.   An actual and justiciable controversy exists between Underwriters and Defendants regarding Underwriters' obligations under the Policy insofar as Defendants contend that coverage is afforded to them for the Tender while Underwriters contend that coverage is not afforded for Tender.

62.   By virtue of the foregoing, Underwriters are entitled to a judgment declaring that there is no duty to defend or indemnify Defendants in connection with the Tender by operation of Policy Sections V.5.J., V.5.MM.1, V.5.MM.2., and/or V.5.F.

## **PRAYER FOR RELIEF**

WHEREFORE, Underwriters pray for the following relief and for judgment against Oxgord and DTD as follows:

# COUNT I

1. A judgment declaring that Underwriters have no duty to defend or indemnify Oxgord or DTD in connection with the *Hild* action.

2. For Underwriters' costs of suit herein; and

3. For such other relief as this Court deems just and proper.

# COUNT II

1. A judgment declaring that Underwriters have no duty to defend or indemnify Oxgord or DTD in connection with the *Buonsante* action.

2. For Underwriters' costs of suit herein; and

3. For such other relief as this Court deems just and proper.

# COUNT III

1. A judgment declaring that Underwriters have no duty to defend or indemnify Oxgord or DTD in connection with the Tender.

2. For Underwriters' costs of suit herein; and

3. For such other relief as this Court deems just and proper.

Dated: February 25, 2022       TROUTMAN PEPPER HAMILTON
                               SANDERS LLP


                               By:      */s/Michael K. Cassata*
                                   Terrence R. McInnis
                                   Michael K. Cassata
                                   Attorneys for Plaintiff
                                   CERTAIN UNDERWRITERS AT
                                   LLOYD'S, LONDON SYNDICATE 2623